**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------

D.O. and H.O., on behalf of L.O.,

                                        Plaintiffs,

            - against -                                    **COMPLAINT**

New York City Department of Education,                    **08 CV 2024 (DAB)**

                                        Defendant.

----------------------------------------------------------------

        Plaintiffs, D.O. and H.O., on behalf of L.O., by their attorneys, Mayerson & Associates, as and for their Complaint, alleges and states the following:

        1.  Plaintiff L.O., the son of plaintiff D.O. and H.O., is a minor child who has been diagnosed with a serious autism spectrum disorder.  L.O. was at all relevant times was and is a student residing within the New York City School District entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400, *et. seq.*, the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education law and Part 200 of the Commissioner's Regulations.

        2.  Plaintiffs D.O. and H.O. are the parents of L.O.  Plaintiffs are residents of the State of New York, residing at all relevant times at an address in Manhattan within the New York City Department of Education's Region 9, District 2.

        3.  L.O. and his parents D.O. and H.O. are not expressly named herein by their given names because of the privacy guarantees provided in the IDEIA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. § 99.

4.  Defendant New York City Department of Education ("NYCDOE"), upon information and belief, is a duly constituted school district organized under the laws of the State of New York, and is the agency charged with the obligations to provide L.O. with a free and appropriate public education ("FAPE"), *see infra*, ¶ 8.

### THE RELIEF BEING SOUGHT

5.  This action is brought pursuant to the provisions of 20 U.S.C. § 1400, *et. seq.*, more commonly known as the IDEIA and, in particular, 20 U.S.C. §§ 1415(i)(2) and (3).  *See also*, 34 C.F.R. §§ 300.516 and 300.517.

6.  This action is being brought to secure statutory attorneys' fees that plaintiffs are entitled to recover pursuant to the fee-shifting provisions of the federal IDEIA statute, 20 U.S.C. §§ 1415(i)(3)(A)-(G).  D.O. and H.O., on behalf of L.O. should be awarded attorneys' fees as the "substantially prevailing party" in due process hearings for the 2003-2004 and 2004-2005 school years, under New York City Impartial Hearing Office Case Numbers 58781 and 104420, respectively.

### JURISDICTION AND VENUE

7.  This Court, pursuant to 20 U.S.C. §§ 1415(i)(2) and (3), 34 C.F.R. §§ 300.516 and 300.517, 28 U.S.C. §§ 1331 and 1367, has jurisdiction of this action without regard to the amount in controversy.  Venue is proper in that plaintiffs and defendant both reside in or are situated in this District.

8.  Pursuant to the IDEIA statute, as well as the New York State Education Law, all school agencies within the State are required to offer eligible students with disabilities special education programs and services that are tailored to meet the individual needs of each child with a

disability.  The FAPE required under IDEIA will be different for each child, as IDEIA does not accept a "one size fits all" approach.

### FACTUAL BACKGROUND FOR THE 2003-2004 SCHOOL YEAR

9.  On or about December 12, 2003, D.O. and H.O., through their attorneys, Mayerson & Associates, filed for an impartial hearing at the administrative level in an effort to secure reimbursement and other relief relating to the 2003-2004 school year for the cost and expenses of L.O.'s tuition and related services.  L.O.'s parents filed for due process due to the NYCDOE's failure to recommend and provide an appropriate placement and program individualized for L.O.'s specialized needs.

10. The underlying proceeding initially was withdrawn on or about April 2004, without prejudice, for settlement negotiations.  The NYCDOE never made an authorized and approved settlement offer and, therefore, L.O.'s parent re-filed their request on or about March 18, 2005.

11. The evidentiary hearing on this matter took place on April 19, 2005.  Gary S. Mayerson, Esq., of Mayerson & Associates represented the plaintiff.  The NYCDOE took no specific position.  Instead, the NYCDOE generally opposed the relief requested by L.O.'s parents.  Plaintiffs bore the burden of proof in regards to the appropriateness of the services provided to L.O. pursuant to the Burlington/Carter test for relief.[1]

12. The impartial hearing officer heard testimony from L.O.'s witnesses regarding the appropriateness of the services provided by private providers secured by L.O.'s parents.  The NYCDOE, on the other hand, did not offer any testimony, documentary evidence, or legal argument regarding the claims raised by L.O.'s parents.

---

[1] Reference is made to School Committee of Burlington v. Dept. of Educ. of Massachusetts, 471 U.S. 359, 105 S.Ct. 1996 (1985), and Florence Court School Dist. Four v. Carter, 510 U.S. 7, 114 S.Ct. 361 (1993), which set the standards for determining whether a handicapped child's unilateral educational placement is eligible for reimbursement relief.

13. By "Findings of Fact and Decision" date June 1, 2005, Impartial Hearing Officer Mindy G. Wolman, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in this administrative due process proceeding.  Defendant never appealed from the underlying administrative decision, which thus became final and non-appealable on or about July 6, 2005.

### FACTUAL BACKGROUND FOR THE 2004-2005 SCHOOL YEAR

14. On or about August 27, 2004, L.O.'s parents, through their attorneys, Mayerson & Associates, filed for an impartial hearing at the administrative level in an effort to secure reimbursement and other relief relating to the 2004-2005 school year for the cost and expenses of L.O.'s tuition and related services.  L.O.'s parents filed for due process due to the NYCDOE's failure to recommend and provide an appropriate placement and program individualized for L.O.'s specialized needs.

15. This case was withdrawn, without prejudice, because of settlement negotiations.  The NYCDOE never made an authorized and approved settlement offer and L.O.'s parent re-filed their request as to the 2004-2005 school year on or about April 4, 2006.  L.O.'s parents also amended their demand for due process on or about May 26, 2006.

16. The evidentiary hearing on this matter took place on June 5 and July 13, 2006.  Randi M. Rothberg, Esq., of Mayerson & Associates represented the plaintiff.  The NYCDOE conceded Prong I of the Burlington/Carter test for reimbursement.  However, the NYCDOE argued that L.O.'s parents' choice of services was not appropriate under Prong II and the parents request for reimbursement should be denied on equitable grounds (Prong III).

17. Pursuant to the United States Supreme Court decision in <u>Schaffer v. Weast</u>, 546 U.S. 49, 126 S.Ct. 528 (2006), plaintiffs then bore the burden of persuasion on all three prongs of the <u>Burlington</u>/<u>Carter</u> test for relief.[2]

18. The impartial hearing officer heard testimony from six witnesses regarding the appropriateness of L.O.'s unilateral program and services.  Plaintiffs submitted 16 documents in support of their claims.  The NYCDOE did not present any testimony or documentary evidence.

19. By "Findings of Fact and Decision" dated August 11, 2006, Impartial Hearing Officer Susan C. Lushing, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in this administrative due process proceeding.  By letter dated August 29, 2006, plaintiffs requested that the impartial hearing officer review her decision and consider three aspects of the Order section that did not conform to the Findings of Fact.

20. The hearing officer reviewed the decision and on or about September 11, 2006 issued and "Amended Findings of Fact and Decision."  Again, the impartial hearing officer rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in this administrative due process proceeding.  Defendant never appealed from the underlying administrative decision, which thus became final and non-appealable on or about July 6, 2005.

## CONCLUSION

21. The defendant is liable to pay plaintiffs their reasonable attorneys' fees arising out of L.O.'s IDEIA administrative due process proceedings, and in this action.  The fees requested herein are entirely reasonable and appropriate because:

---

[2] The New York and New Jersey legislatures have since enacted legislation now shifting the Prong I burden back to the school district.

(a) upon information and belief, plaintiffs' attorneys' office is the only firm in the country whose practice is devoted almost exclusively to representing children and adolescents with autism spectrum disorders, like L.O., in educational rights disputes;

(b) the principal of plaintiffs' attorneys' firm has testified before the United States Congress on the subject of the educational rights of children diagnosed with autism spectrum disorders;

(c) plaintiffs' attorneys have published and presented on the subject of the educational rights of children diagnosed with autism spectrum disorders;

(d) plaintiffs' attorneys have special knowledge and expertise concerning the educational needs of children diagnosed with autism spectrum disorders;

(e) plaintiffs' attorneys' office has represented children with autism spectrum disorders in numerous states across the nation, and has consulted to families outside of the United States; and

(f) to the extent that there is a "prevailing rate" in the Southern District of New York for sophisticated autism intervention cases, plaintiffs' attorneys' rates are reasonable and within the applicable standard.

22. Necessary duties involved with preparing L.O.'s cases for administrative due process hearings for the 2003-2004 and 2004-2005 schools years included, but were not limited to: (a) corresponding with plaintiff and L.O.'s service providers; (b) holding numerous telephone conferences; (c) writing and filing impartial due process hearing requests; (d) reviewing and disclosing documentary information relevant to L.O.'s claims; (e) scheduling and preparing witnesses to testify at the hearings; and (f) developing effective case presentations for the 2003-2004 and 2004-2005 school years.

23. For all of the above efforts, plaintiffs should be awarded attorneys' fees, related costs and disbursements for the 2003-2004 and 2004-2005 school years in an amount to be set by this Court, at plaintiffs' counsel's prevailing rates.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, this Court should (a) fix and award plaintiffs their statutory attorneys' fees and related costs and disbursements from the IDEIA due process proceedings for the 2003-2004 and 2004-2005 school years in an amount to be set by the Court, at plaintiffs' counsel's prevailing rates (b) award plaintiffs the attorneys' fees and related costs and disbursements associated with this action in an amount to be set by the Court, and (c) award plaintiffs such other, different and further relief as this Court deems proper.

Dated: February 29, 2008
     New York, New York

Gary S. Mayerson (GSM8415)
Mayerson & Associates
330 West 38th Street, Suite 600
New York, New York 10018
(212) 265-7200
(212) 265-1735 (facsimile)

## FINDINGS OF FACT AND DECISION

|                       |                       |
|-----------------------|-----------------------|
| Case No.              | 58781                 |
| SED ID No.            | 14090                 |
| Student's Name:       | I███ C███████         |
| Date of Birth:        | May 9, 2000           |
| District:             | 2                     |
| Hearing Requested by: | Parent                |
| Date of Hearing:      | April 19, 2005        |
| Record Close Date:    | May 19, 2005          |
| Hearing Officer:      | Mindy G. Wolman, Esq. |

Findings of Fact and Decision                                                                    1
Case No. 58781
_____

## NAMES AND TITLES OF PERSONS WHO APPEARED APRIL 19, 2005

| | | |
|---|---|---|
| H███ O██████ | Mother | |
| Gary Mayerson, Esq. | Attorney | Parents |
| Mary Lowery | Educational ABA Supervisor, | Parents |
| (By Telephone) | McCarton Center | |
| Michael Smith | SEIT teacher | Parents |
| (By Telephone) | | |
| Frances Zawacky | CPSE Adminstrator | Department of Education |

Findings of Fact and Decision                                                                    2
Case No. 58781

On March 21, 2005, the parents of I███O., by their attorney Gary Mayerson, Esq., filed
a request for an impartial hearing under the Individuals with Disabilities Education Act, 20
U.S.C. section 1415(f)(1). I was appointed as hearing officer on March 23, 2005, and the matter
came on for a hearing on April 19, 2005. The compliance date for issuing a decision was
extended to June 4, 2005. Lists of the individuals that appeared at the hearing and the
documentary evidence submitted are appended to this decision.

## BACKGROUND AND POSITIONS OF THE PARTIES

This case involves the parent's claim for tuition reimbursement for the 2003-2004 school
year. They filed a request for an impartial hearing in 2003 regarding this claim, but withdrew it
in April of 2004 without prejudice because they thought that it was being settled. The
Department of Education never made a settlement offer, and the parents re-filed their request in
March of 2005.

I███ is five years old and was classified as a preschool student with a disability during
the 2003-2004 school year. I███ is diagnosed as autistic. His parents placed him in the
Rhinelander Children's School (the "Rhinelander School"), a general education preschool, for
the 2003-2004 school year, with extensive supports from the McCarton Center. They seek
reimbursement for I███s general education program at the Rhinelander School and for the
services provided by the McCarton Center. In their challenge to the recommendations that the
Department of Education's Committee on Preschool Special Education ("CPSE") made for the
2003-2004 school year, the parents cited numerous procedural and substantive deficiencies: the
lack of participation of a general education teacher and additional parent member at the CPSE
meeting, the failure to adequately assess I███s current levels of performance, failure to develop
a functional behavioral assessment ("FBA") or behavior intervention plan ("BIP"), the failure to
consider assistive technology, the failure to properly fill out I███s Individualized Education
Program ("IEP"), the failure to properly propose IEP goals and objectives, the failure to specify
specific objective criteria for the mastery of goals and objectives, the failure to provide speech
and language therapy in accordance with the requirements for children diagnosed with autism,
and the failure to provide for parent counseling and training. They contend that the program that

they implemented for their son (for the 2003-2004 school year) through the McCarton Center and the Rhinelander School was appropriate and adequately met L███s special education needs. They further contend that equitable factors support their claim for reimbursement.

The Department of Education did not make an opening statement or a closing statement. It's representative noted at the hearing that she had thought that the hearing pertained to the 2004-2005 school year, and that she had not prepared for the hearing because she did not think that it would be going forward because reimbursement for the 2004-2005 school year had been "referred for settlement." Although the Department of Education did not offer any testimony, documentary evidence, or legal argument regarding the claims raised herein, it generally opposed the relief requested by the parents.

The student's mother testified at the hearing. The parents called the Department of Education's representative as a witness. They also presented the testimony of the ABA Supervisor from the McCarton Center and L███s ABA therapist/SEIT instructor. The parents' documentary evidence included L███s 2003 IEP, evaluations, correspondence, progress reports, and financial documentation.

The testimony and documentary evidence will be discussed more fully below.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A board of education may be required to pay for education services obtained for a child by the child's parent, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parent were appropriate, and equitable considerations support the parent's claim. (School Committee of the Town of Burlington v. Department of Education, Massachusetts, 471 U.S. 359 [1985]). The fact that the facility selected by the parents to provide special education services to the child is not approved as a school for children with disabilities by the State Education Department is not dispositive of the parents' claim for tuition reimbursement (Florence County School District Four et al. v. Carter by Carter, 510 U.S. 7[1993]).

A board of education bears the burden of demonstrating the appropriateness of the program recommended by its CSE (Matter of Handicapped Child, 22 Ed. Dept. Rep. 487;

Application of a Child with a Handicapping Condition, Appeal No. 92-7; Application of a Child with a Disability, Appeal No. 93-9). To meet its burden, a board of education must show that the recommended program is reasonably calculated to allow the child to receive educational benefits (Bd. of Ed. Hendrick Hudson CSD v. Rowley, 458 U.S. 176 [1982]), and that the recommended program is the least restrictive environment for the child (34 CFR 300.550[b]; 8 NYCRR 200.6[a][1]). An appropriate program begins with an IEP which accurately reflects the results of evaluations to identify the child's needs, provides for the use of appropriate special education services to address the child's special education needs, and establishes annual goals and short-term instructional objectives which are related to the child's educational deficits (Application of a Child with a Disability, Appeal No. 93-9; Application of a Child with a Disability, Appeal No. 93-12). A board of education must also establish that a student will be suitably grouped based on his age and his social, physical, academic and management needs. 8 NYCRR 200.6[a][3]. School districts can meet this burden by providing a class profile or providing information about the selection criteria be used in placing students in the recommended classroom. Application of a Child with a Disability, Appeal. No. 97-67.

The IEP prepared by the CPSE for the 2003-2004 school year is procedurally defective. The CPSE did not include two mandated participants - a general education teacher and an additional parent member. An IEP that is developed by a CPSE that lacks required participants is a nullity and cannot form the basis of an appropriate placement. L███s IEP was also substantively defective. The evaluation purportedly considered by the CPSE clearly reflected a need for an ABA program, parent training to assist in the generalization of skills, intensive speech/language therapy (five one hour sessions per week of individual therapy) and two hours per week of individual occupational therapy (Exh. 4). There was no other evaluation in the record that would indicate that any other type or level of services would be appropriate. The IEP prepared for the 2003-2004 school year ( Exh. 8) provided for only three half-hour sessions per week of speech and language therapy and three half-hour sessions per week of occupational therapy. It did not provide for any form of parent training or any other means of assisting L███ generalize his skills There was nothing in the record that would support a finding that the IEP

prepared by the CPSE would meet L███s educational needs. Nor was there any showing that
L██ would be appropriately placed at the CPSE's recommended placement at the
YAI/Gramercy School ("Gramercy") or that he would be suitably grouped based on his age, or
on his social, physical, academic and management needs. To the contrary, the record supports a
finding that placement at Gramercy was inappropriate (see Exh. 12)

     Moreover, despite the acknowledgment that L███ behavior "seriously interferes with
instruction" (Exh. 8 at p. 4A), the CPSE did not obtain or make arrangements for an FBA or BIP.
This renders its evaluation inadequate and its program and placement recommendations
insufficient.

     For all the foregoing reasons, I find that the Department of Education did not establish
that the CPSE's program and placement recommendations were appropriate. The parents have
met the first of the three prongs of the Burlington/Carter analysis.

     The program chosen by L███s parents met his special education needs. His parents
enrolled him in a mainstream pre-school program at the Rhinelander School, with special
education instruction, supports and services being provided by staff from the McCarton Center.
It is clear that the program chosen by his parents allowed L██ to make substantial educational
progress in the least restrictive environment. He was accompanied by a SEIT instructor for the
entire school day at the Rhinelander School. He required this service in order to function in the
general education environment. In addition, during the 2003-2004 school year he received home
ABA therapy, parent training, individual speech and language therapy, and individual
occupational therapy.[1] This level of support and services allowed L██ to function in a general
education environment and make substantial educational progress during the 2003-2004 school
year (see Exhs. 5, 6, 14, 15, 16,17, and 18; Tr. 4/49/05 at 34-60, 65-77). Other than through
some brief cross-examination questions, the Department of Education did not contest the
parents' assertion that the Rhinelander School program supplemented by services from the

---

[1] I note that the parents provided a lesser level of occupational therapy and speech and language
therapy than the amount recommended in the McCarton Center evaluation. This was because
they could not afford the full level of services (Tr. 4/19/05 at 82).

Findings of Fact and Decision                                                    6
Case No. 58781

McCarton Center adequately met L███s special education needs in the least restrictive
environment.

    For all the foregoing reasons, I find that the program chosen by L███ s parents was
appropriate. His parents met their burden of establishing that it met his special education needs.
The parents have therefore met the second of the three prongs of the Burlington/Carter analysis.

    I further find that equitable factors support the parents' claim for tuition reimbursement.
They cooperated with the CPSE. Both parents attended the CPSE meeting. They cooperated in
the social history and in the evaluation process. They shared copies of the results of their
privately-obtained evaluations and timely notified the Department of Education about their
concerns regarding the CPSE's recommended placement at Gramercy. (Exh. 10).

    The cost of tuition at the Rhinelander School for the 2003-2004 school year was
$6,325.00 (Tr. 4/19/05 at 85). The cost for the services provided by the McCarton Center for the
2003-2004 school year was $160,394.50 (Tr. 4/19/05 at 84, Exhs. 22 and 23). Although the cost
of the services provided by the McCarton Center appears to be rather high, the Department of
Education did not contend that these costs were excessive or unreasonable in any way.

    I note that part of the parents' claim for tuition reimbursement is for tuition at a general
education program. The Department of Education did not contend at any time during the hearing
process that the reimbursement claim should be limited to the special education portion of the
program obtained by the parents by limiting reimbursement to the McCarton Center program.
Since that issue was not raised at the hearing, I decline to find that equitable factors warrant any
such limitation. I also note that it would be inappropriate to limit reimbursement to the McCarton
Center expenses, because the general education placement at the Rhinelander School was an
integral part of L███s special education program in the least restrictive environment.

    Having met all three of the Burlington/Carter criteria for tuition reimbursement, I find
that L███s parents are entitled to an order directing that the Department of Education reimburse
them for the cost of L███s educational placement and services for the 2003-2004 school year.

Findings of Fact and Decision                                                                  7
Case No. 58781

## ORDER

It is hereby ordered that:

1.    The Department of Education is directed to reimburse L███s parents the sum of $160,394.50, for the cost of services rendered by the McCarton Center during the 2003-2004 school year, upon the submission of proof of payment.

2.    The Department of Education is directed to reimburse L███s parents the sum of $6,325.00, for the cost of tuition at the Rhinelander Children's School during the 2003-2004 school year, upon the submission of proof of payment.

Dated: June 1, 2005

MINDY G. WOLMAN, ESQ.
Impartial Hearing Officer

## PLEASE TAKE NOTICE

**Within 35 days of the date of this decision, the parent and/or the Board of Education of the City of New York has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.**

**"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.**

**Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.**

# AMENDED FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 104420 |
| Student's Name: | L████ O████████ |
| Date of Birth: | May 9, 2000 |
| District: | 2 |
| Hearing Requested By: | Parent |
| Date of Hearing: | June 5, 2006<br>July 13, 2006 |
| Hearing Officer: | Susan C. Lushing, Esq. |

Hearing Officer's Amended Findings of Fact and Decision                                          1

Case No.  104420

## NAMES AND TITLES OF PERSONS WHO APPEARED JUNE 5, 2006

| | | |
|---|---|---|
| Randi Rothberg | Attorney, Mayerson & Associates | Parent |
| J███ C█████████ | Parent | |
| H████ C█████████ | Parent | |
| Kristin Doyle-Edmondson | Physical Therapist | Parent |
| Gemma White | Speech Provider | Parent |
| Frances Zawacy | CPSE Administrator | Department of Education |

## NAMES AND TITLES OF PERSONS WHO APPEARED JULY 13, 2006

| | | |
|---|---|---|
| Randi Rothberg | Attorney, Mayerson & Associates | Parent |
| J███ C█████████ | Parent | |
| Frances Zawacy | CPSE Administrator | Department of Education |
| Mary Lowery | Applied Behavioral Analysis Supervisor | Department of Education |

Case No. 104420

I was appointed as the Impartial Hearing Officer in this matter on April 5, 2006 after a request for an impartial hearing was received by the Department of Education (DOE) from the attorney representing the parent. An impartial hearing was held on June 5 and July 13, 2006. At the hearing, Mayerson & Associates, by Randi Rothberg, Esq. represented the parents and Frances Zawacky. Committee on Preschool Special Education (CPSE) administrator, represented Committee on Special Education (CSE) District 2. Upon request of the parties, the compliance date was extended several times with a final compliance date of September 3, 2006.

**PARENT'S POSITION**

The parent called six witnesses and introduced 16 documents in evidence as Exhibits A-P. The parent is requesting reimbursement for expenses during the 12-month 2004-2005 school year (through August 2005) when the student was still classified as a preschooler with a disability, specifically tuition at the Rhinelander preschool with special education itinerant teacher (SEIT) support and physical therapy , speech and Applied Behavioral Analysis (ABA) services provided through the McCarton Center.

**Michael Smith** has a master's degree in special education and four years experience with autistic children at the McCarton Center. He was this student's SEIT at Rhinelander during 2004-2005 for about 12 ½ hours per week, including transition time to after-school activities. In addition he provided some additional ABA therapy on an irregular basis at McCarton. The student attended Rhinelander four days a week for 2 ½ hours in a class with 15 youngsters, of whom 13 were typically developing, plus three teachers and two SEIT'S. It was a child-friendly environment with a focus on social and play skills and fine motor activities. Mr. Smith shadowed him in the classroom, helped him with transitions, with social skills at play and with activities of daily living, such as using the bathroom, dressing and washing hands. He modeled language and behavior for the student, used prompts and repetition to assist him to follow directions, stay on task, play appropriately and communicate verbally with his peers. The student loved being around his classmates and they were models for him in terms of language and behavior. During the year he became more independent and so needed fewer prompts and less attention from the shadow, increased his vocabulary and expressive and social language and acquired more understanding of what he was reading. At the McCarton Center the

Case No. 104420

therapists worked on writing letters and words and other academic skills as well as communication and turn taking which overlapped activities in school. (Tr. of 6/5/06 at 17-50).

**Kristin Doyle-Edmondson** has been an occupational therapist since 1993 and has worked exclusively with autistic children since 1999. At McCarton Center she was involved with this student, as supervisor or treating therapist, since October 2003. During the 2004-2005 school year he had his therapy reduced from three to two 45-minute 1:1 sessions per week, addressing primarily his ability to take in and process appropriately sensory information from his environment. This deficit affected his balance and equilibrium, his ability to sit at a table, participate in fine motor activities and gym. The sessions were held in a specially equipped sensory gym and focused on motion to stimulate the vestibular receptors in the inner ear, an obstacle course to allow "crashing" body contact with surfaces around him in a safe way, fine motor strengthening activities using a pencil or scissors and gross motor activities to increase muscle strength and stability. By contributing daily written contact notes, the therapist had the means to compare and coordinate his progress with the ABA therapists and speech providers at McCarton. There was a meeting at least weekly to discuss his progress. Generally he worked with one primary occupational therapist but there were four others who knew him and who would fill in on occasion. He made good progress in meeting his Occupational Therapy (OT) goals (Exhibit B). It was important that the sessions continue during the summer to prevent regression. (Tr. 50-79).

**The mother** testified that at about age two, the student began to lose language. He was diagnosed with autistic spectrum disorder at Mount Sinai and began receiving services through Early Intervention, at first ABA at home then at Manhattan Learning Center plus OT, speech and additional ABA. In May 2003 following an Individualized Education Program (IEP) meeting with the Committee on Preschool Special Education (CPSE), he began at Young Adult Institute (YAI) Gramercy (Exhibit P). Although they were told he would receive ABA at YAI, the school discontinued these services which were necessary for his behavior as he would throw tantrums lasting two-to-three hours. In June or July 2003, they had him evaluated by the McCarton Center and based on a classroom observation and the recommendations of 20 hours ABA plus OT and speech,

Case No.  104420

they notified the social worker at YAI that they were removing him from the school in September 2003. As the social worker said she would take care of everything with the DOE, the parents did not contact the CPSE directly. The student started at the Rhinelander School about January 2004. By September 2004, he still had issues with speech, behavior, gross motor skills but his tantrums had decreased to 30-40 minutes a couple of times a day. He was not toilet trained, spoke mostly using single words and had a short attention span.

There was no IEP meeting for 2004-2005; the parents received no phone calls and the father with better English would handle written communication such as Exhibit G. Pleased at his progress, the parents decided to continue him at Rhinelander School for 2004-05 where tuition was $6050 for the year. During 2004-2005 he made progress in ADL skills such as dressing and toileting, in his attention span, in social skills like patiently waiting for his turn and sharing toys, in language as he could now speak in short sentences, in fine and gross motor skills such as picking up tiny objects, writing his name, climbing monkey bars in the playground, and in academic areas like counting and vocabulary. The parents would communicate regularly with the classroom teachers and the ABA providers and would be given feedback to use at home. Some of the invoices in Exhibit H for the McCarton Center were dated later to help the parents meet the financial burden by postponing payment but all the services were provided during the school year in question. Including the SEIT, the student received 18-20 hours of ABA, later reduced during the school year for financial reasons to 15-16 hours. (Tr. 81-120).

**Gemma White** provided speech therapy for the student at the McCarton Center beginning in March 2005, taking over from another therapist, Leslie Stone. They provided feeding sessions and pragmatic speech 1:1 with constant physical and gestural prompting to redirect his attention. His main problems were a severe auditory processing disorder, delayed expressive/receptive skills and delayed pragmatics involving eye contact and social cues. There was a standardized assessment using the Preschool Language Scale (PLS-4) in May 2005 (Exhibit C) which showed that despite significant improvement, the student was two standard deviations below the mean in receptive and expressive language. During 2004-05, he made gains in all areas – in receptive language, in responding to multi-step instructions and in sound blending, quantitative concepts,

Case No. 104420

pronouns and prepositions; in expressive language in making requests using full sentences, syntax and sentence order, sequential story telling and answering "w" questions; in pragmatics in social reciprocity, gaining attention from adults and peers by word and gesture, topic maintenance in conversation and play. The student received four weekly 1:1 sessions of 45 minutes from two therapists between September 2004 and March 2005 and from March to August 2005 Ms. White provided two weekly sessions. (Tr. 121-151).

**Mary Lowery** is the educational ABA supervisor at the McCarton Center and worked as the ABA consultant for this student during the 2004-05 school year and the summer of 2005. At the beginning he had strengths in visual learning, memory and social cues but weaknesses in language and attention so that he needed constant redirection. When frustrated with difficult tasks, he would either shut down and ignore the therapist or get aggressive and scream, kick or hit. The student responded well to discrete trial instruction and that methodology, provided 1:1, using repetition of small and specific skill sets, was crucial to his success in improving his readiness skills, his receptive and expressive language, his social engagement with eye contact and spontaneous language. (Exhibit E). During the year he also developed his pre-academic skills in counting, weather, calendar, alphabet, sight vocabulary, coloring, cutting and writing and became more independent in Activities for daily living ADL skills such as toileting, washing his hands and other aspects of personal hygiene, eating, following routines to put his backpack in his cubby and toys away, putting on his shoes and socks, etc. The supervisors and the therapists collaborated on a behavior plan that would reduce his maladaptive behaviors using language and positive reinforcers. The supervisors looked over the daily data, made an on-going assessment of and changes to the program, provided training and guidance for the therapists, supervised team meetings and communicated with the parents to provide things to do at home. It was helpful for him to have exposure to typically developing peers at Rhinelander as role models so he could apply what he was learning in a more natural environment. (Tr. of 7/13/06 161-208)

**The father** testified that after early intervention services at home, his son began in YAI Gramercy in May 2003 pursuant to an IEP drawn up by the CPSE on March 28, 2003. (Exhibit P). The father sent a letter to the CPSE Administrator on 9/4/03 asking for

Case No.  104420

home therapy and a CPSE meeting as soon as possible (Exhibit L) but none was held. By September the family had noticed deterioration and arranged for Ms Rasor of the McCarton Center to do a classroom observation. (Exhibit M) After she confirmed that YAI was not the appropriate setting for him, the father sent a letter to the social worker at YAI on 9/23/03 withdrawing his son (Exhibit K). In April 2004 the parents received the consent to evaluate form and sent back the bottom part (Exhibit G). There were phone calls from a DOE social worker asking for additional documents which the parents supplied by fax in May. In August, the father sent a letter to Ms Zawacky stating the parents would seek to hold the DOE financially responsible for services provided to their son. (Exhibit O) The father sent another fax with documents attached to the attention of Ms. Zawacky or Mr. Canzoneri on September 2, 2004 (Exhibit J). The parents also began looking for appropriate nonpublic schools for preschool and kindergarten and sent a fax informing Ms. Zawacky and asking for assistance in November (Exhibit I). In the summer of 2005, his son went to Japan for July. In August he had ABA, speech and OT services at McCarton Center. During the 2004-05 school year these services varied because of the parents' finances and the student's health issues but OT was generally between 1 and 3 hours, speech between 2 and 4 hours and ABA up to 20 or 25 hours including the time of the 1:1 SEIT at Rhinelander. He made progress, especially in his behavior, and he is now able to attend the Herbert Birch School in a class of 8:2 or 3. (Tr. 209-249).

**DOE POSITION**

The DOE conceded that there was no IEP and no placement recommendation made for the 2004-2005 school year but argued that the parents' choice of services was not appropriate and that the parents' did not properly notify the DOE of their removal of their son from YAI and hence should be denied reimbursement on equitable grounds.

**FF AND D**

A Board of Education may be required to reimburse parents for their costs if the services offered by the Board are inappropriate, the services selected by the parents are appropriate and equitable considerations support the parents claim. School Committee of Burlington v Department of Education of Massachusetts, 471 U.S. 359 (1985), Florence County School District Four v Carter by Carter, 510 U.S. 7 (1993).  The burden of proof now rests on the parent as to all recommendations being challenged as well as to prongs

Case No. 104420

two and three. As the DOE concedes there was no meeting of the CPSE and no recommendation made for 2004-2005, clearly there was a denial of free appropriate public education (FAPE).

Turning to the parent's choice of placement and services, with one exception I find them to be appropriate for this youngster and hence they are to be paid for by the DOE. The evidence shows that the student received educational benefit from attending the Rhinelander School in a 10-month program in a class with mostly typically-developing age-appropriate peers, supplemented by a 1:1 ABA-trained SEIT and outside ABA, OT and speech therapists, with continuing services from the therapists during part of the summer months. The witnesses described at great length his increased acquisition of language and social skills, improvements in attention and a lessening of interfering behaviors such as tantrums, advancement in his fine and gross motor skills, in personal hygiene and in pre-academic areas like counting, writing and letter recognition.

The amount of services varied for financial and health reasons but during the 10-months at Rhinelander, it generally comprised about 12 ½ hours from the SEIT at school and in transition to other activities, additional ABA therapy amounting to 7 ½ to 12 ½ hours, 2 to 4 hours of speech and 1 to 3 hours of OT, plus additional hours for a supervisor to oversee and coordinate the program. During August the therapies continued with a greater number of ABA hours as a replacement for school. With the exception of invoices from speech therapists for "treatment of swallowing dysfunction and/or oral function for feeding" – a service which was not discussed or explained during the testimony of Ms. White nor in her speech and language progress report (Exhibit C) and hence was not shown to be appropriate and beneficial for this student – all monies paid to the McCarton Center are eligible for reimbursement as well as the Rhinelander tuition of $6050.

Turning to prong 3, the DOE argues that the parents did not adequately cooperate with the CPSE so that they bear part of the responsibility for its failure to prepare an IEP for the 2004-2005 school year. Specifically the DOE points to the fact that the parent notified YAI of its decision to remove their son in September 2003 (Exhibit K) but never directly informed the CPSE by phone or mail. While I agree it would have been helpful if the parent had done so, the CPSE should have learned the information by alternate

Hearing Officer's Amended Findings of Fact and Decision                                    8

Case No.  104420

methods. As a school receiving placements from the DOE, YAI should have reported when it was no longer providing services to a student and the CPSE had an ongoing obligation to monitor progress of the youngsters it placed there. The father was not acting in bad faith since he sent many other letters and faxes to the CPSE during 2003 and 2004 (Exhibits I, J and L).   In addition the parent responded to the written request for evaluations sent by the CPSE in April 2004 (Exhibit G). Thus whatever confusion and misunderstanding there was about the student's location during the 2003-04 school year, the parent's behavior does not bar reimbursement on equitable grounds for the 2004-05 school year.

Finally the costs of the services are reasonable in relation to similar services: i.e., $6050 for tuition at Rhinelander, $125-$130 per hour for ABA therapy and $160 for the services of the ABA supervisor, $145-$155 for 1:1 OT services and $75-$80 for speech therapy.

THEREFORE IT IS ORDERED that upon proof of actual payment, the DOE reimburse the parents for the following services for the 2004-05 school year to August 31, 2005:

a)    an ABA-trained therapist, who was present as a 1:1 SEIT in school or who provided ABA therapy, for a maximum of 25 hours per week at the maximum rate of $130 per hour;

b)    occupational therapy  for a maximum of 3 hours per week at a maximum rate of $155 per hour;

c)    speech and language therapy, not including those sessions for swallowing dysfunction and/or feeding, for a maximum of 4 hours per week at a maximum rate of $80 per hour;

d)    the regular services of an ABA supervisor at a maximum rate of $160 per hour.

Dated:  August 11, 2006

## Addendum to FFD

By letter dated August 29, 2006, the attorney for the parents requested that I review my decision and consider three aspects of the Order section which do not conform to the Findings of Fact.  I have done so and find Ms. Rothberg to be correct in two of her

Case No.  104420

points:  1) that I omitted to specifically order tuition reimbursement for the Rhinelander school which I clearly intended to do and 2) that the ABA supervisor's fee increased for the last three dates of service and should be reimbursed for them at the higher rate of $175 per hour.

As to her third request, the amount of ABA services this student received was erratic throughout the 12-month school year.  From the evidence presented it is impossible to establish a precise boundary between the appropriate number of hours per week which are reimbursable under Burlington and Carter as opposed to an optimal quantity of ABA services. However during the school year it was presented that the largest frequent quantity of hours per week of ABA services which was 25 and I find that the DOE should not reimburse beyond that amount.  During August when the student did not attend Rhinelander, the ABA services the DOE shall reimburse for the actual hours of service even if they exceed 25 per week.

**The Order section of the FFD should be amended [ in a) and d) with a new e) added ] to read as follows:**

THEREFORE IT IS ORDERED that upon proof of actual payment, the DOE reimburse the parents for the following services for the 2004-05 school year to August 31, 2005:

a)    an ABA-trained therapist, who was present as a 1:1 SEIT in school or who provided ABA therapy outside the school at the maximum rate of $130 per hour, for a maximum of 25 hours per week between September 2004 and June 2005 and for the actual hours provided during August even if the total exceeds 25 hours per week;

b)   occupational therapy for a maximum of 3 hours per week at a maximum rate of $155 per hour;

c)   speech and language therapy, not including those session for swallowing dysfunction and/or feeding, for a maximum of 4 hours per week at a maximum rate of $80 per hour;

d)   the regular services of an ABA supervisor at a maximum rate of $160 per hour except for services rendered on August 17, 18 and 25, 2005 which shall be reimbursed at the rate of $175.00 per hour; and

Case No.  104420

e) tuition at the Rhinelander school in the amount of $6050.00.

Dated:  September 11, 2006

*Susan C. Lushing, Esq.*

SUSAN C. LUSHING, ESQ.
Impartial Hearing Officer

SCL:nn

**PLEASE TAKE NOTICE**

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed.  The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed.  If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision.  Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Case 1:08-cv-02024-DLC    Document 1-2    Filed 02/29/2008    Page 20 of 20
Hearing Officer's Amended Findings of Fact and Decision                                11

Case No.  104420

## DOCUMENTATION ENTERED INTO RECORD JUNE 5, 2006

| | | |
|---|---|---|
| A. | Amended Demand for Due Process, 5/25/06, 7 pp. | Parent |
| B. | Physical Therapy Progress Report, 6/22/05, 2 pp. | Parent |
| C. | Speech and Language Progress Report, 6/21/05, 4 pp. | Parent |
| D. | Observation, 5/12/05, 1 p. | Parent |
| E. | ABA Programming and Progress Report, 2/20/05, 5 pp. | Parent |
| F. | Evaluation, 9/10/04, 11 pp. | Parent |
| G. | Letter from District 9, 4/23/04, 1 p. | Parent |
| H. | Invoices, Checks & Statements, 2004-2005, 124 pp. | Parent |

## DOCUMENTATION ENTERED INTO RECORD JULY 13, 2006

| | | |
|---|---|---|
| I. | Fax from Father, 11/9/04, 1 p. | Parent |
| J. | Fax from Father & Attached Documents, 9/2/04, 43 pp. | Parent |
| K. | Letter from Father, 9/23/03, 1 p. | Parent |
| L. | Letter from Father, 9/4/03, 2 pp. | Parent |
| M. | School Observation, 9/3/03, 3 pp. | Parent |
| N. | Receipts from Rhinelander, Fall 2004 Spring 2005, 2 pp. | Parent |
| O. | Letter from Father, 8/26/04, 1p. | Parent |
| P. | IEP, 3/28/03, 15 pp. | Parent |